# 19-30006

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

―――――――――

## UNITED STATES OF AMERICA,

**Plaintiff - Appellant,**

**v.**

## JUAN CARLOS BASTIDE-HERNANDEZ,

**Defendant - Appellee.**

―――――――――

On Appeal From The United States District Court
For The Eastern District of Washington
District Court No. 1:18-cr-2050-SAB-1
The Honorable Stanley A. Bastian, United States District Judge

―――――――――

## DEFENDANT - APPELLEE'S
## PETITION FOR REHEARING *EN BANC*

―――――――――

Paul E. Shelton
Federal Defenders of Eastern Washington
& Idaho
306 E. Chestnut Ave.
Yakima, WA 98901
(509) 248-8920
Email: paul_shelton@fd.org

Attorney for Defendant - Appellee

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **U.S.C.A. No. 19-30006** |
| **Plaintiff-Appellant,** | |
| **v.** | **U.S.D.C. No. 1:18-cr-2050-SAB-1** |
| **JUAN CARLOS BASTIDE-HERNANDEZ,** | |
| **Defendant-Appellee.** | **Defendant-Appellee's Petition for Panel <u>Rehearing</u> <u>*En Banc*</u>** |

## I.     INTRODUCTION

On February 2, 2021, a panel for this Court issued a split decision [Attached as Appendix A] reversing the district court's dismissal. It is important to recognize the Honorable Danny J. Boggs, of the United States Circuit for the U.S. Court of Appeals for the Sixth Circuit, was not only the tie-breaking vote but issued the majority opinion. In defense counsel's judgment, rehearing *en banc* is warranted pursuant to Rules 35(a)(1) and (a)(2) of the Federal Rules of Appellate Procedure. First, this matter is one of exceptional importance because it potentially affects hundreds of thousands of criminal immigration prosecutions and civil immigration proceedings. A ruling in this case regarding competing statutes passed by Congress, regulations implemented by an agency, and the agency's interpretations of those regulations will have broad-reaching implications in a variety of other contexts.

Further, consideration by the full *en banc* court is necessary to secure and maintain uniformity of this Court's decisions. As Honorable M. Smith of this Court stated in his

dissent, the majority's "interpretation ignores *Karingithi's* holding that the regulations—and specifically the regulatory requirements for an NTA—control when jurisdiction vests."[1] The majority substantially departed from this Court's prior panel rulings in *Karingithi v. Whitaker*[2] and *Aguilar Fermin v. Barr*,[3] both of which found jurisdiction vested in an immigration court only where a subsequent curative document had been served. Instead, here the two-judge majority of this panel held that a single sentence of one regulation controls the vesting of jurisdiction while subsequent sentences of the same regulation and related regulations have no impact whatsoever. To definitively resolve this issue, *en banc* review is necessary.

## II.    STATEMENT OF THE CASE[4]

Mr. Bastide-Hernandez's relevant removal proceedings began in April 2006. Specifically, immigration authorities encountered him in a county jail serving time on local charges.[5] On August 26, 2006, immigration prepared two Notices to Appear ("NTA") and served both on Mr. Bastide-Hernandez.[6] Both NTAs were prepared the

---

[1] *United States v. Bastide-Hernandez*, 986 F.3d 1245, 1252 (9th Cir. 2021) (2-1 decision) (Smith, M., dissenting).

[2] 913 F.3d 1158 (9th Cir. 2019).

[3] 958 F.3d 887 (9th Cir. 2020).

[4] Mr. Bastide-Hernandez and the United States submitted full statements of the case and statements of fact in their respective briefs. *See* Dkt. Entries 3 and 27. For the sake of brevity, Mr. Bastide-Hernandez only summarizes the most relevant facts and procedural history in this petition.

[5] ER 19-20. "ER" refers to the Excerpts of Record submitted with the United States' opening brief. *See* Dkt. Entry 3.

[6] ER 21-24.

same day by the same officer.[7] Both NTAs advised him to appear for a removal hearing at a date and time "to be set" at an immigration court in Seattle, Washington.[8] Both NTAs reflect that they were served the same day on Mr. Bastide-Hernandez.[9] The certificates of service state that he was served in-person and provided oral notice in Spanish of the time and place of his removal hearing—an impossibility because no date had been set.[10]

Approximately two weeks after the NTAs were prepared and served, the Seattle immigration court prepared a Notice of Hearing ("NOH") regarding Mr. Bastide-Hernandez's removal hearing.[11] The NOH advised that his removal hearing was set for June 14, 2006, at the NWDC in Tacoma.[12] The certificate of service states that the NOH was served by "fax" on Mr. Bastide-Hernandez "c/o Custodial Officer" the same day it was prepared.[13] Mr. Bastide-Hernandez's signature nor his initials appear anywhere on the NOH.[14] The United States offered no additional proof in the district court record to show that Mr. Bastide-Hernandez was actually served with the NOH, and if so when.

---

[7] ER 21, 23.

[8] ER 21, 23.

[9] ER 22, 24.

[10] ER 21-24.

[11] ER 25.

[12] *Id.*

[13] *Id.*

[14] *Id.*

Mr. Bastide-Hernandez's removal hearing occurred on June 14, 2006 as scheduled. The hearing was apparently presided over by the immigration court in Seattle.[15] However, it appears that Mr. Bastide-Hernandez did not appear in-person because he was served with the removal order via "fax … c/o custodial officer" rather than personal service.[16] The removal order indicates that Mr. Bastide-Hernandez did not make any applications for relief from removal, including voluntary departure.[17] He also did not appeal the removal order.[18] The immigration judge found Mr. Bastide-Hernandez removable and ordered him removed to Mexico.

The United States indicted Mr. Bastide-Hernandez for illegal reentry on August 14, 2018, citing his June 2006 removal order.[19] Mr. Bastide-Hernandez filed a motion to dismiss the indictment in November 2018, alleging the underlying removal order was void because the immigration court lacked subject matter jurisdiction due to the NTA not including the date and time of his removal hearing.

Following a hearing where no testimony was admitted,[20] the district court issued an order granting the motion to dismiss.[21] The district court held that the Supreme

---

[15] ER 26.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] ER 48-49.

[20] SER 1-42 (transcript of hearing on motion to dismiss). "SER" refers to the supplemental excerpts of record prepared and submitted with the answering brief. *See* Dkt. Entry 28.

[21] ER 3-18.

Court's analysis in *Pereira v. Sessions*[22] applied and the NTA was deficient under 8 U.S.C.

§ 1229 (which the Court held applied to the regulation defining when jurisdiction vests,

8 C.F.R. § 1003.13) for failing to include the date and time of the removal hearing.[23]

The district court further found that the NOH did not cure the NTA's deficiencies

because the NOH is not a "charging document" under 8 C.F.R. § 1003.13, the NOH

was issued by the immigration court rather than filed with the court by immigration

authorities, and the NOH was served by fax despite a requirement under both a statute

and applicable regulations that it be served either in-person or by mail.[24] The district

court further held that Mr. Bastide-Hernandez did not need to satisfy 8 U.S.C.

§1326(d)'s requirements to collaterally attack a removal order because the immigration

court lacked subject matter jurisdiction, rendering the removal order "void on its

face."[25]

The United States filed a timely notice of appeal.[26] Following full briefing, this

case was argued and submitted December 7, 2020. A divided panel issued a 2-1 opinion

in this matter on February 2, 2021, with the majority reversing the district court's

holdings and remanding the case for further proceedings.[27] The majority opinion,

authored by the Honorable Danny J. Boggs of the Sixth Circuit Court of Appeals, held

---

[22] 138 S. Ct. 2105 (2018).

[23] ER 5-11.

[24] ER 12-13.

[25] ER 15-17.

[26] ER 1-2.

[27] *Bastide-Hernandez*, 986 F.3d 1245 (9th Cir. 2021).

that the regulations control when jurisdiction of the immigration court vests and that it vests upon filing of a NTA, even when a NTA fails to advise the noncitizen of the time, date, or location of the hearing.[28] The majority recognized the confusion as to when jurisdiction vests that was created by the prior panel rulings in *Karingithi* and *Aguilar Fermin*; however, they stated that commencing removal proceedings with a defective NTA does not affect jurisdiction because jurisdiction "either exists or it does not" and jurisdiction cannot "unvest" even when the NTA "lacked required time, date, and location information."[29]

The dissent, authored by the Honorable Milan D. Smith, Jr, would affirm the district court's dismissal and stated that, "if the regulations determine when jurisdiction vests, and the regulation's optional inclusion of the hearing information allows a later cure, then the regulation's mandatory information should be required for jurisdiction to vest."[30] The dissent stated that both *Karingithi* and *Aguilar Fermin* relied on the fact the deficiencies in the NTA were later cured and the majority's opinion is a "clear rejection of our binding precedent."[31] The dissent further stated that, under the majority's view, "filing any document that purports to be a Notice to Appear with the Immigration Court is enough to vest jurisdiction with the IJ, even if that document

---

[28] *Id.* at 1247-48.
[29] *Id.* at 1248.
[30] *Bastide-Hernandez*, 986 F.3d at 1251 (M. Smith, dissenting).
[31] *Id.*

does not comply with the regulatory requirements for an NTA, and those deficiencies are never cured."[32]

## III. THE COURT SHOULD GRANT REHEARING *EN BANC* AND AFFIRM THE DISTRICT COURT'S ORDER OF DISMISSAL.

### A. As an initial matter, just as the panels did in *Karingithi* and *Aguilar Fermin*, this panel erred in finding the regulations are controlling. The *en banc* Court should find that the statute, not the regulations, control when an immigration court's jurisdiction vests.

The substantive basis for Mr. Bastide-Hernandez's motion to dismiss was that a putative "Notice to Appear" that does not comply with 8 U.S.C. § 1229(a)(1) is not truly a Notice to Appear, and thus not sufficient to vest subject matter jurisdiction in an immigration judge. This argument relies on the Supreme Court's ruling in *Pereira v. Sessions*.[33] A panel of this Court rejected this argument in *Karingithi*, holding that 8 U.S.C. § 1229(a) "says nothing about the Immigration Court's jurisdiction" and instead it is the "regulations" that control when jurisdiction vests, citing 8 C.F.R. §§ 1003.13, 1003.14, 1003.15, and 1003.18.[34]

Every circuit to address a *Pereira*-based attack on an immigration court's subject matter jurisdiction has similarly rejected the argument, holding either that the regulations control when jurisdiction vests (as this Court held in *Karingithi*) or that the regulations do not affect subject matter jurisdiction because they are mere "claim

---

[32] *Id.* at 1251-52.
[33] 138 S. Ct. 2105 (2018).
[34] *Karingithi*, 913 F.3d at 1160.

processing" rules.[35] In the latter cases, the courts also still find that § 1229 has no effect on jurisdiction despite finding the regulations do not affect jurisdiction, begging the question of what does control the jurisdiction of these legislatively-created courts if neither the applicable statutes nor regulations do. In any event, despite the consistency of the circuit courts in finding otherwise, legislative history and the enactment of 8 U.S.C. § 1229 makes clear that the statute actually *does* control an immigration court's jurisdiction.

When enacted, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA)[36] made a multitude of changes to immigration laws generally and to removal proceedings specifically. Among them, Congress enacted 8 U.S.C. § 1229 regarding the "Initiation of Removal Proceedings" and repealed 8 U.S.C. § 1252b.[37] This statute (§ 1229) specifically states that "written notice (…a 'notice to appear') shall be given" to the person in removal proceedings, and this NTA must specify "the time and place at which the [removal] proceedings will be held."[38] Congress did not include an "or otherwise" provision in § 1229, a conscious deletion from the pre-IIRIRA law.

---

[35] *See, e.g., Perez-Sanchez v. U.S. Att'y Gen.,* 935 F.3d 1148 (11th Cir. 2019). The Board of Immigration Appeals has reached a similar conclusion. *See Matter of Rosales Vargas*, 27 I. & N. Dec. 745 (B.I.A. 2020).

[36] Congress enacted the IIRIRA as part of the Omnibus Consolidated Appropriations Act of 1997. *See* 110 Stat. 3009, P.L. 104-208 (Sept. 30, 1996). For the Court's convenience, the entirety of the IIRIRA is attached as Appendix B.

[37] Appendix B at 33-34, 53.

[38] Appendix B at 33-34.

Functionally, this significant shift from pre-IIRIRA law to the new statutes affected a number of pending deportation/removal cases. To account for the significant shift from pre-IIRIRA law to the new statutes, Congress included a transition statute within the IIRIRA.[39] This transition statute specified that, generally, the new laws would not apply to persons in pre-IIRIRA exclusion or deportation proceedings.[40] However, the transition statute gave the Attorney General the option to convert pre-IIRIRA cases and proceed under the new law if an evidentiary hearing had not yet been held.[41]

If the Attorney General chose to transition a person from pre-IIRIRA exclusion or deportation proceedings to post-IIRIRA removal proceedings, the transition statute required the Attorney General to provide written notice to the noncitizen at least 30 days prior to any evidentiary hearing.[42] The transition statute provided that a timely notice of hearing under this section "shall be valid **as if provided under section 239 of such Act … to confer jurisdiction on the immigration judge.**"[43] Section 239 is 8 U.S.C. § 1229, which defines the required contents of a Notice to Appear.[44] Thus, a plain reading of the transition statute makes clear that Congress intended for a NTA **as defined under 8 U.S.C. § 1229** to confer jurisdiction on immigration judges to conduct removal proceedings.

---

[39] Appendix B at 67-68 (P.L. 104-208 at Div. C, Sec. 309).
[40] Appendix B at 67 (Sec. 309(c)(1)).
[41] Appendix B at 67 (Sec. 309(c)(2)).
[42] Appendix B at 67 (Sec. 309(c)(2)).
[43] Appendix B at 67 (Sec. 309(c)(2)) (emphasis added).
[44] Appendix B at 33-34.

This transition statute undermines the Ninth Circuit's holdings and reasoning in *Karingithi*, *Aguilar Fermin*, and in this case. While 8 U.S.C. § 1229 does not explicitly state that service of a NTA as defined in § 1229(a)(1) is required to confer jurisdiction on the immigration judge, the IIRIRA *did* explicitly say exactly that in the transition statute, and the transition statute directly references § 1229. Thus, service of a § 1229-compliant NTA is necessary to confer jurisdiction on an immigration judge.

Consequently, to confer jurisdiction on an immigration judge, immigration officials must serve a noncitizen with a NTA that complies with 8 U.S.C. § 1229. This Court should grant rehearing *en banc* and reconsider its prior rulings that § 1229 has "nothing" to do with jurisdiction and give this argument the consideration it merits. When it does, this Court should find that the statute does affect jurisdiction and that service of a document purporting to be a NTA that does not contain all information required under § 1229(a) fails to vest the immigration court with subject matter jurisdiction.

**B.** **Rehearing *en banc* is necessary to secure and maintain uniformity due to the conflicting opinions in *Karingithi*, *Aguilar Fermin*, and this case regarding how and when jurisdiction vests in an immigration court.**

The majority opinion rests on two conclusions, neither of which are sound. First, the majority set aside (with insufficient substantive analysis) the requirement found in both *Karingithi* and *Aguilar Fermin* that information not provided in the NTA must be provided in a subsequent document prior to the hearing for jurisdiction to fully vest.

Second, the majority relies on the first sentence of one subsection of a single regulation (8 C.F.R. § 1003.14(a)), ignoring subsequent language within the same regulation and language in surrounding regulations (8 C.F.R. §§ 1003.13, 1003.15, and 1003.18) that clearly define what a charging document is, what information it must contain, and why the vesting of jurisdiction depends on compliance with all of these regulations.

    1)  <u>As Honorable M. Smith's dissent recognizes, *Karingithi and Aguilar Fermin* required curative actions when a NTA is deficient for jurisdiction to vest in the immigration court</u>

One panel of this Court held in *Karingithi v. Whitaker* that the regulations promulgated by the Attorney General controlled the vesting of jurisdiction in immigration courts and that the relevant statute (8 U.S.C. § 1229) did not.[45] The Court found in that case that failing to include the date and time of the removal hearing in a NTA did not deprive the immigration court of subject matter jurisdiction so long as that information was provided in a subsequent NOH.[46] This holding in *Karingithi* was "specifically conditioned" on the subsequent notice being made.[47]

Another panel of this Court subsequently ruled in *Aguilar Fermin v. Barr* that failing to include the address of the immigration court in the NTA does not deprive an immigration court of jurisdiction, so long as that information is provided in a

---

[45] *See* 913 F.3d 1158, 1160 (9th Cir. 2019) ("[T]he regulations, not § 1229(a), define when jurisdiction vests.").

[46] *See id.* at 1161-62 (*citing Matter of Bermudez-Cota*, 27 I. & N. Dec. 441 (B.I.A. Aug. 31, 2018)).

[47] *Bastide-Hernandez*, 986 F.3d at 1250 (M. Smith, dissenting) (*citing Karingithi*, 913 F.3d at 1162).

subsequent notice.[48] As in *Karingithi*, the Court found the address of the immigration court could be provided in a subsequent NOH.[49] The dissenting judge in the panel on this appeal noted that the ruling in *Karingithi* ought to have led to a different result in *Aguilar Fermin*, putting those cases in "tension" with one another.[50]

In this appeal, the majority found jurisdiction vests as soon as a defective NTA is filed, even where the defects are never cured. This is a conscious disregard for the regulatory requirement that information not provided in the NTA must subsequently be provided in another document.[51] Moreover, this is a substantial departure from the prior panel rulings in both *Karingithi* and *Aguilar Fermin*, where subsequent documentation had been provided to cure defects in the NTA. The analysis and explanation for this departure consists of two paragraphs and the selective citation of the first sentence of one regulation, 8 C.F.R. § 1003.14(a), with no discussion as to why the remainder of that same regulation subsection does not require that the address of the immigration court be included in either the NTA or in a subsequent curative document for jurisdiction to vest. The majority also dedicates zero analysis to 8 C.F.R. § 1003.15(b), which defines the required contents of a NTA, nor any to 8 C.F.R. §1003.18(b), which requires that any information missing from the NTA be provided in a subsequent written notice.

---

[48] *See* 958 F.3d 887, 893-95 (9th Cir. 2020).

[49] *See id.* at 895.

[50] *Bastide-Hernandez*, 986 F.3d at 1251 (M. Smith, dissenting).

[51] *See* 8 C.F.R. § 1003.18(b).

Although ignored by the majority, the Honorable M. Smith in his dissent recognized the already existing conflict between *Karingithi* and *Aguilar Fermin*, where a plain and straightforward reading of *Karingithi* should have led to a different result in *Aguilar Fermin*.[52] The dissent further stated a "faithful application of *Karingithi* requires us to affirm the district court's dismissal of the indictment."[53] The conflicting holdings between this Court's panel opinions in *Karingithi*, *Aguilar Fermin*, and this appeal, along with the exceptional importance of the ultimate question presented (what, if anything, controls the subject matter jurisdiction of immigration courts?) creates a necessity for this entire Court to hear this appeal.

2) <u>By deviating from precedent, the panel majority created even more confusion about what exactly defines and determines the subject matter jurisdiction of immigration courts.</u>

Despite recognizing that both *Karingithi* and *Aguilar Fermin* held jurisdiction vested where deficiencies in a NTA had been cured through service of subsequent documents, the majority here found a defective NTA need not be cured. Instead, the majority found the mere filing of a NTA, even a defective one, immediately and irrevocably vests the immigration court with jurisdiction. The majority rationalized their

---

[52] *See Bastide-Hernandez*, 986 F.3d at 1251 ("When applied to the separate question of the address where the NTA will be filed, *Karingithi's* analysis dictates that jurisdiction does not vest in the immigration court if the NTA excludes the address. If the regulations determine when jurisdiction vests, and the regulation's optional inclusion of the hearing information allows a later cure, then the regulation's mandatory information should be required for jurisdiction to vest.").

[53] *Id.* at 1253.

decision by stating that jurisdiction either exists or it does not and that it cannot be lost once it is established.[54]

As the Court previously did when deciding *Aguilar Fermin*, the majority here read the first sentence of 8 C.F.R. § 1003.14(a) as completely disconnected from the second sentence (which requires the address of the immigration court to be included in the NTA) as well as from § 1003.15(b)(6) (which requires the same).[55] Also like the Court failed to do in *Aguilar Fermin*, the majority here did not sufficiently explain ***why*** these regulations should be read in such a disconnected manner. It is nonsensical to only consider one sentence in 8 C.F.R. § 1003.14 and ignore others (including the next sentence in the same regulation) that are just as important and impactful on vesting jurisdiction. These regulations ought to be read harmoniously.[56]

If the case stands as is, the United States has successfully abdicated its requirement to cure deficiencies in NTA's, a requirement that its own regulations impose. *See* 8 C.F.R. § 1003.18(b). This Court should read all relevant regulations as requiring that a NTA contain certain information and that any missing information be provided for jurisdiction to vest. Because no such curative document exists in this case, the immigration court was never vested with subject matter jurisdiction.

---

[54] *See id.* at 1248.

[55] *See* 958 F.3d at 895 (*citing Matter of Rosales Vargas*, 27 I. & N. Dec. 457 (B.I.A. Jan. 9, 2020).

[56] *See Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1016 (9th Cir. 2017) ("[W]e apply the familiar rule of construction that, where possible, provisions of a [regulation] should be read so as not to create a conflict.") (internal quotations omitted).

## IV.   CONCLUSION

For the reasons set forth herein, this Court should grant rehearing *en banc* and affirm the district court's ruling granting the motion to dismiss.

Dated: March 2, 2021.

s/ Paul Shelton
Paul Shelton, 52337
Federal Defenders of Eastern
Washington and Idaho
306 East Chestnut Avenue
Yakima, Washington 98901
(509) 248-8920
(509) 248-9118 (fax)
Paul_Shelton@fd.org
Attorney for Defendant-Appellee

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 11. Certificate of Compliance for Petitions for Rehearing or Answers
*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)** | 19-30006 |

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/answer to petition is (*select one*):

⊙  Prepared in a format, typeface, and type style that complies with Fed. R. App.
P. 32(a)(4)-(6) and **contains the following number of words**: | 3,440 | .

*(Petitions and answers must not exceed 4,200 words)*

## OR

○  In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/Paul E. Shelton | **Date** | Mar 2, 2021 |
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 11**        *Rev. 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form17instructions.pdf

**9th Cir. Case Number(s)**  | 19-30006

The undersigned attorney or self-represented party states the following:

○  I am unaware of any related cases currently pending in this court.

○  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

◉  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

> USA v Isidro Muniz-Sanchez, 19-30182 (panel opinion issued 2/5/21, counsel intends to file petition for rehearing); USA v Jose Gonzalez-Valencia, 19-30222 (panel opinion issued 2/12/21, counsel intends to file petition for rehearing);USA v Rubisel Delcarmen-Abarca, 19-30153 (panel opinion issued 2/18/21, counsel intends to file petition for rehearing); USA v Jose Miranda-Reyes, 20-30057 (presents substantively similar question, fully briefed, may be set for oral argument in future); USA v Romero-Romero, 19-30144 (presents substantively similar question, fully briefed, may be set for oral argument in future); USA v Manuel Sanchez, 20-30084 (presents substantively similar question, fully briefed, may be set for oral argument in future).

**Signature**  | s/Paul E. Shelton | **Date** | Mar 2, 2021

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 17**                                                                 *New 12/01/2018*